**IT IS SO ORDERED.**

**Dated:  29 August, 2025 12:58 PM**

Suzana Krstevski Koch
**Suzana Krstevski Koch**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JEFFREY MICHAEL CRAWFORD & | ) | Case No. 24-11690 |
| CHRISTINE ANN CRAWFORD, | ) | |
| Debtors. | ) | |
| | ) | Judge Suzana Krstevski Koch |
| | ) | |
| ANDREW R. VARA, | ) | |
| UNITED STATES TRUSTEE, | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 24-01066 |
| v. | ) | |
| | ) | |
| JEFFREY MICHAEL CRAWFORD & | ) | |
| CHRISTINE ANN CRAWFORD, | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OF OPINION AND ORDER GRANTING THE U.S. TRUSTEE'S MOTION FOR SUMMARY JUDGMENT</u>

This adversary proceeding is before the Court on a Motion for Summary Judgment (the "Motion") filed by Plaintiff Andew R. Vara, the United States Trustee (the "U.S. Trustee") (ECF No. 26).  Defendants Jeffrey Michael Crawford ("Mr. Crawford") and Christine Ann Crawford (Mrs. Crawford) (together "the Crawfords") filed a Reply (the "Response"), which the Court

construes as a brief in opposition.  ECF No 41.  The U.S. Trustee filed a Reply.  ECF No. 45.

For the following reasons, the Court determines that there are no genuine issues of material fact

under either 11 U.S.C. § 727(a)(3) or (a)(5) and the U.S. Trustee's Motion is granted.

## BACKGROUND

The following facts are presented in the light most favorable to the Crawfords as the non-

moving party and are undisputed unless otherwise noted.[1]  During all relevant times, the

Crawfords lived, and continue to live at 34418 Saint Maron Boulevard, Avon, Ohio 44011 (the

"Residence").  ECF No. 26, Ex. G ("April 9 Depo. Tr.") 9:1; Ch. 7 Case No. 24-11690 (the

"Main Case") ECF No. 1.[2] According to Mr. Crawford, the "County records show" the

Residence value to be "around $585,000."  ECF No. 36, Ex. B. ("341 Meeting Tr."). 20:1-2.

Mr. Crawford has worked in the home construction business for years.  He began his

career working for Ryan Homes, (April 9 Depo. Tr. 24:23-24) before moving on to business

ownership.  From around 2014-2023 (about nine years), he owned and operated Cleveland

Custom Homes, a luxury home design company.  341 Meeting Tr. 16:12-17; April 9 Depo Tr.

10:21.  Mr. Crawford also owned a number of other companies, none of which are presently in

operation: Cleveland Custom Home Design Build, LLC (341 Meeting Tr. 13:21); Avon

Development Group (*Id.* at 14:9-10); Red Tail Number 14, LLC (*Id.* at 14:14); and JCM

Distribution, LLC (*Id.* at 14:19).  Most recently, he has been doing subcontracting work (*Id.* at

18:8-11).  He earned a four year degree from Baldwin Wallace University.  April 9 Depo Tr.

10:6-13.

---

[1]  On July 10, 2025 the U.S. Trustee filed a notice regarding stipulations, stating that he was "unable to secure the [Crawfords'] agreement regarding proposed stipulations in this case."  ECF No. 24.

[2]  All ECF citations are to Adversary Proceeding Case No. 24-01066 unless noted otherwise.

2

Mr. Crawford explained that Cleveland Custom Homes was "a luxury home builder that identified our customers according to what they wanted to build, we designed it with them and then we built it. And we utilized a number of subcontractors and vendors to do that." April 9 Depo. Tr. 16:9-13. He further explained that they had "like 20-some customers we were talking to, all 800,000, a million-plus customers. And we were a really sound company." *Id.* at 32:2-5. Yet, when a customer would pay a 10% deposit, Mrs. Crawford testified that "No, I don't think we provided any receipts, ever." *Id.* at 22:23-24.

At least when receiving the deposits, the Crawfords would deposit those funds in a bank account ("everything went through the bank"). *Id.* at 23:6-7. Even with "everything" going "through the bank," the Crawfords could not answer how much they personally received from Cleveland Custom Homes in income or distributions ("I'd have to try to figure that out"). *Id.* 17:1.

The Crawfords did, though, pay for personal expenses out of the Cleveland Custom Homes bank accounts. Mr. Crawford explained, "I'm sure we did, yes." 341 Meeting Tr. 40:25.

The record does not discuss Mrs. Crawford's work history in detail. Since 2023, Mrs. Crawford has owned and operated Ned's Maintenance Plus, a maintenance company doing trash removal, parking lot repairs, handyman work (341 Meeting Tr. 39:9-11), demo, landscaping, and consulting (April 9 Depo. Tr. 13:13-15.). Mrs. Crawford explained that she took out about $10,000 per month from Ned's Maintenance Plus. *Id.* at 9:3. Mrs. Crawford was certified as a cardiac technician by a local community college. *Id*. at 12:1-6.

From 2021 to 2023, "in order to continue to keep up with what was going on and bring in business" for Cleveland Custom Homes, Mr. Crawford took out several "hard money loans." *Id.*

3

at 28:13-24. On February 18, 2023, the Crawfords granted a mortgage, secured by the Residence, to Danny M. Properties (341 Meeting Tr. 20: 3-5) to secure a loan of $300,000 (*Id.* at 20: 20-21). According to Mr. Crawford, the owner of Danny M. Properties (Hani Muntaser) physically transferred the $300,000 to him in a "bag full of cash."[3] *Id.* at 21:7-11. Mrs. Crawford described it as a "big bag of cash." April 9 Depo. Tr. 32:22-23. The bag of cash was "kept in the morning room of [the Residence] next to a small wicker cabinet. . . ." 341 Meeting Tr. 22:25, 23:1. Regarding the $300,000 in case, in deposition, Mrs. Crawford testified:

> Well when I received the money I said to them, "I'm going right to the bank to take the money to the bank." And he said, "No, no, you can't do that." I said, "Why? I don't feel comfortable with all this." And so he convinced me and said, "Just pay off your trades here and there and you'll be fine." And I did that.

April 9 Depo. Tr. 33:4-10. Ultimately, the $300,000 was "used to keep [Cleveland Custom Homes] running, pay contractors, material, vendors, trades." 341 Meeting Tr. 20:24, 21:1.

Mr. Crawford explained that the $300,000 was spent within a month. *Id.* at 22:5. Mrs. Crawford said the money was spent between February and June of 2023, and that Mr. Crawford "dealt with the money for the most part." April 9 Depo. Tr. 34:4-11.

A more detailed summary of the accounting for how the Crawfords spent the $300,000 follows, but Mrs. Crawford explained that on at least one occasion, even though "she had nothing to do with it quite frankly" (April 9 Depo. Tr. 34: 10-11), she put $29,000 in cash on her front porch and "[Tom Caruso] would come and get it" (*Id*. at 46:2-3), adding, "Yeah. I'm not going to leave that kind of money out there." *Id.* at 46:5-6.

---

[3] The Court has questions about why neither Mr. nor Mrs. Crawford deposited the bag of cash into a bank account. The incomplete and unsatisfactory answers provided at the 341 Meeting and in the April 9 Deposition do not alleviate the Court's concerns about this non-traceable and dubious financial transaction.

4

### 1. The Petition

On April 30, 2024, the Crawfords filed a Petition for Relief (the "Petition") under Chapter 7 of Title 11 of the United States Code. Main Case, ECF No. 1. The Crawfords' Petition indicates that their debts are primarily consumer debts. *Id.* at 5. On Schedule A/B: Property ("Schedule A/B"), the Crawfords list the following interests in deposits of money: $0.00 in a checking account at Fifth Third Bank; $0.00 in a second checking account at Fifth Third Bank; $0.00 in a checking account at Key Bank; and $0.00 in a checking account at Chase Bank. *Id.* at 12-13. On Schedule D: Creditors Who Have Claims Secured by Property, the Crawfords list a secured claim for $300,000 from Danny M. Properties that is secured by the Residence. *Id.* at 18.[4] On the Statement of Financial Affairs, Part 8, question 20 asks: "Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred." The Crawfords answered "No." *Id.* at 52.[5]

On the petition date, the Crawfords also filed schedules of debts and liabilities and the Official Form 107: Statement of Financial Affairs for Individuals Filing for Bankruptcy. The Crawfords signed the Statement of Financial Affairs on April 30, 2024. Upon signing the Statement of Financial Affairs, the Crawfords "declare under penalty of perjury that the answers are true and correct."

On the petition date, the Crawfords signed and filed a Declaration re: Electronic Filing of Documents and Statement of Social Security Number ("ECF Declaration"). Main Case, ECF

---

[4] On Schedule E/F: Creditors Who Have Unsecured Claims, the Crawfords also list "Danny Properties" as a nonpriority creditor with a claim of $300,000. ECF No. 1, at. 25.

[5] This summary of the Crawford's petition only includes information that is relevant to the U.S. Trustee's Motion.

No. 7.  In signing the ECF Declaration, the Crawfords swore that the information provided in the electronically filed petition, statements, and schedules, as well as in any other documents that must contain signatures, was true, correct, and complete.

### 2. The 341 Meetings

In accordance with 11 U.S.C. § 701, the U.S. Trustee appointed Robert D. Barr, Esq. to serve as the chapter 7 trustee (the "Chapter 7 Trustee") in the Main Case.  The initial meeting of creditors held pursuant to 11 U.S.C. §341 (the "341 Meeting") was scheduled for June 20, 2024.  Main Case, ECF No. 12.  On June 28, 2024, the U.S. Trustee requested that the Crawfords produce documents and information related to their business and personal finances.[6]  ECF No. 1. The 341 Meeting was adjourned from its original date to July 1, 2024.  Main Case, ECF No. 19. The Chapter 7 Trustee took testimony of the Crawfords at the July 1, 2024 Meeting.  Mr. Crawford testified that he received $300,000 in cash from Danny M. Properties for the mortgage the Crawfords granted to Danny M. Properties.  341 Meeting Tr. 22:17-19.  He further testified that the Crawfords kept the cash in a bag in the morning room in their Residence.  *Id.* at 22:25, 23:2.

On July 16, 2024, the U.S. Trustee made a second request for the Crawfords to produce documents and requested an accounting of the $300,000 cash proceeds.  ECF No. 1. ¶ 30.  The Chapter 7 Trustee again took testimony of the Crawfords on July 29, 2024.  The 341 Meeting was ultimately concluded on September 9, 2024.  Main Case, ECF No. 56.

---

[6]  The U.S. Trustee requested documents and information including but not limited to: copies of the Crawford's personal and business tax returns for 2020 – 2023 including all supporting documentation and copies of the Crawford's business and personal bank account statements for all accounts open during 2022 through the document request date.

6

### 3. The Adversary Proceeding

On October 3, 2024, the U.S. Trustee filed his Complaint, requesting that the Crawfords be denied a discharge pursuant to 11 U.S.C. § 727(a)(3), (a)(4), and (a)(5). ECF No. 1. The U.S. Trustee argued that the Crawfords were not entitled to discharge because they (1) failed to disclose bank accounts (*Id.* at ¶ 19); (2) failed to provide a satisfactory explanation as to the loss of the $300,000 cash proceeds (ECF No. 1, ¶ 27); and (3) failed to provide requested documents, despite request.[7] *Id.* at ¶¶ 28-33. The U.S. Trustee took depositions of the Crawfords on April 9, 2025. On June 13, 2025, the U.S. Trustee filed an Amended Complaint. ECF No. 18.[8] On July 30, 2025, the U.S. Trustee filed the Motion pursuant to § 727(a)(3) and (a)(5). ECF No. 26. On August 14, 2025, the Crawfords filed their Response (ECF No. 41) and on August 19, 2025, the U.S. Trustee filed his Reply. ECF No. 45.

### 4. How the bag of $300,000 cash was spent

The United States Trustee filed a Notice on July 10, 2025 at ECF No. 24, advising the Court that the U.S. Trustee was unable to secure the Defendants' agreement regarding proposed stipulations in this case. A careful review of the United States Trustee's Exhibit C to the Motion (ECF No. 26-4) and the Affidavit of Mr. Crawford (ECF No. 26-6 and ECF No. 41-1) shows

---

[7] As of the filing of the Complaint, the U.S. Trustee claims that he has requested, and the Crawfords have failed to provide: statements for the Fifth Third Bank account ending in x2908 from January 1, 2022 through June 30, 2024; statements for the Fifth Third Bank account ending in x9664 from January 1, 2022 through June 30, 2024; statements for the Fifth Third Bank account ending in x3242 from January 1, 2022 through November 26, 2023; statements for the Chase Bank checking account ending in x4425 from January 1, 2022 through June 30, 2024; statements for the First Federal Lakewood account ending in x1559 from January 1, 2023 through May 31, 2023 and July 1, 2023 through June 30, 2024; a copy of Cleveland Custom Homes' tax return for 2022 and the Form K-1 associated with that return; copies of Cleveland Custom Homes, Ned's Maintenance, the Crawford's personal tax returns for 2023 and all supporting documentation; and documentation substantiating the dissipation and/or use of the $300,000 cash proceeds. ECF No. 1, ¶ 31.

[8] On August 18, 2025, the Crawfords filed their Answer to the U.S. Trustee's Amended Complaint. ECF No. 44.

very few differences in the listing of payees and amounts of how the bag of $300,000 cash was spent. A chart comparing the parties' submissions follows.

| Payee | Amount submitted by Debtor | Amount as submitted by UST | Evidence |
|---|---|---|---|
| Tom Caruso | $49,000 | $75,000 | Text message screen shots |
| New Phase Electric | $28,000 | $28,000 | Photograph of money |
| Carter Lumber | $60,420 | $60,420 | Invoice |
| Parkhill Roofing | $30,000 | $30,000 | Text message screen shots and email |
| ST Carpentry | $32,000 | $32,000 | none |
| Cleveland Custom Homes Deposits | $27,000 | $26,000 | none |
| Cash on hand | $20,000 | $20,000 | none |
| Incentives to Employees | $5,000 | $5,000 | none |
| Deposit to Personal Checking | $10,800 | $10,080 | none |
| Scott Davis | $7,500 | $13,500 | none |
| Unaccounted for | $22,780 | $0 | N/A |
| Total | $292,500 | $300,000 | N/A |

Even though Defendants would not previously stipulate as to any facts, Defendants now concede that the United States Trustee's submission is accurate. Response, ECF No. 41 at p. 6. The Court thus uses the United States Trustee's submission (the "Allocation") as Defendants have conceded it is accurate.

## JURISDICTION

The Court has jurisdiction over the Crawfords' Main Case and this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Local General Order 2012-07 of the United States District Court for the Northern District of Ohio. Actions to determine the dischargeability of debts are core proceedings that this Court may hear and determine under 28 U.S.C. § 157(b)(2)(I). Venue

8

in this Court is proper under 28 U.S.C. § 1409. The U.S. Trustee and the Crawfords consent to final entries by this Court. The following constitutes the Court's findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to this contested matter by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

## DISCUSSION

## I.     SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 for the Federal Rule of Bankruptcy Procedure, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment bears the initial responsibility of advising its basis for its motion, "and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

The moving party can meet its initial burden of proof by either coming forward with evidence showing the absence of a genuine issue of material fact, or by "showing" that there is no such issue by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Where the moving party has met its initial burden, the adverse party must provide significant probative evidence to support its position. *Anderson v. Liberty Lobby,*

9

*Inc.*, 477 U.S. 242, 248 (1986) ("[The non-moving party] may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial.").  A genuine issue exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party.  *Id.*

## II.      DISCHARGE UNDER 11 U.S.C. § 727

The primary policy goal of the Bankruptcy Code is to afford a debtor a fresh start.  *Local Loan Co. v. Hunt*, 292 U.S. 234 (1934).  The bankruptcy discharge serves as a cornerstone of this policy.  The importance attached to the fresh-start policy of the Bankruptcy Code is expressed in § 727(a), whose provisions grant a debtor a presumption that a discharge will be entered in their favor.  The Bankruptcy Code, however, also provides a basis upon which a debtor may be denied the benefits of a bankruptcy discharge.  Section 727(a) establishes that under certain conditions, a debtor may be denied the benefits of a bankruptcy discharge.  *United States v. Kras*, 409 U.S. 434, 445-446 (1973).  "The purpose served by denying a debtor a discharge is to protect the integrity of the bankruptcy system by limiting the benefits of a discharge in bankruptcy to only those debtors who are fully cooperative and honest."  *United States Trs. v. Halishak (In re Halishak)*, 337 B.R. 620, 624 (Bankr. N.D. Ohio 2005).  In other words, a debtor must accept not only the benefits provided by the Bankruptcy Code, but also its burdens.  Among these burdens, a debtor is required to be "absolutely transparent in all matters regarding their financial affairs."  *Peters v. Michael (In re Michael)*, 433 B.R. 214, 220 (Bankr. N.D. Ohio 2010) (referencing Fed. R. Bankr. P. 4002).

In this case, the U.S. Trustee requests denial of the Crawfords' Chapter 7 discharge pursuant to § 727(a)(3) and (a)(5).  If at least one of those limitations on discharge expressed in

10

§ 727(a)(3) or (a)(5) is shown to exist, the Crawfords' discharge may be denied. The burden is placed upon the U.S. Trustee to establish by at least a preponderance of the evidence that at least one of the limitations exists, thereby denying the Crawfords a discharge. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000) ("The elements of a violation of 11 U.S.C. § 727 must be proven by a preponderance of the evidence to merit denial of discharge."); Fed. R. Bankr. P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.").

Here, there is no question that there is insufficient documentation to provide an accounting of how the Crawfords spent $300,000 in cash; instead, the Crawfords argue that their explanations, in lieu of documentation, are sufficient.

III. **11 U.S.C. § 727(a)(3)**

In support of his Motion, the U.S. Trustee first cites to 11 U.S.C. § 727(a)(3). Section 727(a)(3) provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3).

The purpose of this provision of the statute is to provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable time past to present." *United States Trs. v. Zhang (In re Zhang)*, 463 B.R. 66, 91 (Bankr. S.D. Ohio 2012) (quoting *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999) (additional quotation and

11

quotation marks omitted); *see also Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008) (quoting *Burchett v. Myers*, 202 F.2d 920, 926 (9th Cir. 1953)) ("The disclosure requirement removes the risk to creditors of 'the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records.'").

Ultimately, "Section 727(a)(3) prevents debtors from receiving a discharge if the falsified or mutilated financial records keep creditors from understanding a debtor's financial condition or business transactions in the context of a bankruptcy case, but the statute is not designed to address every instance in which records have been mutilated or falsified." *Vara v. Motil (In re Motil)*, No. 22-1084, 2023 Bankr. LEXIS 1541, at *78 (Bankr. N.D. Ohio June 13, 2023).

### A. Failure to keep or preserve any recorded information, including books, documents, records, and papers.

In order to deny the Crawfords' discharge under § 727(a)(3), "one of two conditions must be first shown: (1) the debtor failed to keep or preserve any recorded information, including books, documents, records, and papers; or (2) the debtor, or someone acting for the debtor, committed an act of destruction, mutilation, falsification, or concealment of any recorded information, including books, documents, records, and papers." *In re Michael*, 433 B.R. at 214. Here, the U.S. Trustee argues that the first condition is present: "The [Crawfords], one with extensive business experience and one with newfound business experience, have failed to keep or preserve records from which their financial condition may be ascertained." ECF No. 26.

The U.S. Trustee also states that the Crawfords "failed to produce, and therefore have failed to keep or preserve, statements for the First Federal Lakewood account ending in x9933, the 2023 tax return for Ned's Maintenance Plus," and information relating to the source of income disclosed in the Crawfords' documentation. ECF No. 26.

12

*i.      The $300,000 Cash Payment*

The U.S. Trustee concedes that for purposes of summary judgment, the Crawfords "provided sufficient documentation to substantiate the dissipation of $88,420 of the $300,000 Cash Proceeds" (ECF No. 26), but they "failed to keep or preserve records to explain the dissipation of the remaining $211,580 of the Cash Proceeds."  ECF No. 26.  The U.S. Trustee asserts that while Mr. Crawford "provided text message screenshots, email exchanges, and an accounts receivables report with respect to various payments totaling $79,000," those "screenshots and add[ed] notations . . . occurred about a year after the transactions purportedly occurred" and "the documents provided as to these payments fail to substantiate the amount actually paid."  ECF No. 26.  Moreover, the U.S. Trustee claims that the Crawfords "failed to produce sufficient records to demonstrate how they dissipated the remaining $132,580 of the Cash Proceeds," arguing that "neither the [U.S.] Trustee, the creditors, other parties in interest, nor the Court have sufficient records that document with certainty the use of such funds" and the Crawfords "admit they do not have" such documentation.  ECF No. 26.

In their Response, the Crawfords contend that there is enough documentation for the $300,000 in cash, claiming they "provide[d] sufficient documentation to substantiate paying $60,420 to Carter Lumber on February 24, 2023 and $28,000 to New Phase Electric on February 23, 2023" and that they provided "enough evidence in text messages and emails that document the payment of $257,220 to creditors. . . ."  ECF No. 41.  The Crawfords concede, however, that "they cannot account for the sum of $20,000 representing cash on hand" and that "the disbursement of the sum of $22,780 [of the $300,000 in cash] could not be explained or documented."  ECF No. 41.  Moreover, the Crawfords acknowledge that they "did not provide

receipts to support all of the disbursements of the $300,000." ECF No. 41. In summary, regarding the Allocation, the Crawfords argue that "they provided reasonable explanation to how they spent the $300,000 of cash" and the U.S. Trustee's Motion "should fail." ECF No. 41.

ii.    *First Federal Lakewood account x9933*

Regarding the First Federal of Lakewood account x9933, the U.S. Trustee argues that the Crawfords' failure to produce bank statements for "the First Federal Lakewood account ending in x9933 from (i) January 1, 2022 through May 31, 2023, (ii) July 1, 2023 to July 31, 2023, and (iii) September 30, 2023 to present" justifies denial of discharge under § 727(a)(3). ECF No. 26.

The Crawfords argue that, at the April 9 Deposition, "[Mr.] Crawford testified that $27,000 in cash was deposited in [the Cleveland Custom Homes] account at First Federal of Lakewood" and he further testified that "he deposited $10,800 of the cash into a personal account with KeyBank ending x9542 on February 21, 2023." ECF No. 41.

iii.    *Tax Returns*

Regarding tax returns, the U.S. Trustee argues that the Crawfords' failure to provide "documentation substantiating the source of the $29,167 in income as disclosed on line 1a of the [Crawfords] personal 2023 federal tax return; and [] the tax return for Ned's Maintenance Plus for 2023" warrants the denial of discharge under § 727(a)(3). ECF No. 26.

The Crawfords counter that they "provided their last filed tax return" for tax year 2022. ECF No. 41. The Crawfords "concede that they did not file a 2023 tax return for [] Ned's Maintenance Plus. . . ." ECF No. 41.

Based on the Crawfords' own concessions and acknowledgements regarding their inability to present documents pertinent to the $300,000 in cash, bank accounts, and tax returns,

14

the Court finds that the U.S. Trustee has met his evidentiary burden with regards to the Crawfords' "fail[ure] to keep or preserve any recorded information," in the form of "documents, records, and papers. . . ." 11 U.S.C. § 727(a)(3). The Crawfords failed to keep or preserve recorded information, including books, documents, records, and papers. Printed screen shots of unauthenticated text messages with handwritten notes which were not made contemporaneously are not sufficient for a "luxury home builder" that is a "really sound company." This is compounded by Mrs. Crawford's admission that they did not provide receipts, "ever," for customer deposits, as well as the Crawfords' explanations about leaving cash on their front porch for someone to pick up. The Crawfords are asking this Court to take solely their word for how the $300,000 cash was spent when the Crawfords can not even explain how much they took as income from their business and they readily admit to commingling funds. The Trustee meets the first condition.

**B. The lack of financial records makes the Crawfords' financial condition unascertainable.**

Now that the Court has found the U.S. Trustee has shown that the first condition to deny discharge under § 727(a)(3) is met, the U.S. Trustee must then demonstrate that the Crawfords did not provide creditors with enough information to ascertain their "financial condition and track [their] financial dealings with substantial completeness and accuracy. . . ." *Barbacci v. Stimer (In re Stimer)*, No. 18-06035, 2020 Bankr. LEXIS 823, at *20 (Bankr. N.D. Ohio Mar. 30, 2020). The U.S. Trustee is not required to undertake a forensic accounting to understand the Crawfords' financial affairs. *Silagy v. Rittenhouse (In re Rittenhouse)*, No. 21-6019, 2022 Bankr. LEXIS 898, at *18 (Bankr. N.D. Ohio Mar. 31, 2022) ("A debtor's records are not satisfactory if a trustee, creditor or the court would have to undertake a time consuming and

15

detailed analysis of bank statements, canceled checks, receipts, and the like in order to determine the debtor's financial condition.") (internal quotation marks and citation omitted). Once these elements of a § 727(a)(3) action are established, the U.S. Trustee (as the party objecting to discharge) has sustained his evidentiary burden.

Courts enjoy "'wide discretion'" in determining whether the plaintiff established a *prima facie* case under § 727(a)(3). *See United States Trs. v. Kandel (In re Kandel)*, No. 11-62597, 2015 Bankr. LEXIS 790 at *5 (Bankr. N.D. Ohio Mar. 13, 2015) (quoting *Dolin v. N. Petrochemical Co. (In re Dolin)*, 799 F.2d 251, 253 (6th Cir. 1986)). The Court may consider the Crawfords "education, business experience, sophistication, or any other relevant factor" to determine whether the records are accurate. *In re Zhang*, 463 B.R. at 91.

Courts pay special consideration to the financial records of entities when they are "substantially intertwined with the debtor's personal capacity" in determining whether a debtor's discharge should be denied under § 727(a)(3). *In re Kandel*, 2015 Bankr. LEXIS 790, at *8; *see also Bavely v. Daniels (In re Daniels)*, 641 B.R. 165 184-85 (Bankr. N.D. Ohio 2022) (explaining that requiring business records from closely held companies is part of the higher burden placed on more sophisticated debtors under § 727(a)(3)). When a debtor owns or controls numerous business entities and engages in substantial financial transactions, an absence of recorded information related to those entities and transactions establishes a *prima facie* case for an action to deny discharge under § 727(a)(3). *In re Michael*, 433 B.R. at 222-23 (citing *In re Caneva*, 550 F.3d at 762).

The U.S. Trustee claims that "[w]ithout documentation to support the [Crawfords'] explanations as to the dissipation of the remaining $211,580 in cash proceeds the [Crawfords]

16

have failed to provide records from which their financial condition can be ascertained." ECF No. 26. Moreover, that "by failing to provide certain bank records, a business tax return, and documentation in support of their personal tax returns, the [Crawfords] have failed to provide, and thus have failed to keep or preserve, records from which their financial condition can be ascertained." ECF No. 26. Further, the U.S. Trustee states that "the bank account statements, Ned's Maintenance Plus's 2023 tax return, and outstanding documentation with respect to the source of income on their personal 2023 tax return are records that would allow the [U.S.] Trustee to ascertain the [Crawfords'] financial condition, at least with respect to their income." ECF No. 26.

In support of his position, the U.S. Trustee argues that the Crawfords' assertion that Mrs. Crawford has insufficient knowledge relating to the use of the $300,000 "does not relieve her of her obligation to produce records from which her financial condition can be ascertained pursuant to section 727(a)(3). Mrs. Crawford was a mortgagor on the mortgage and therefore the $300,000 Cash Proceeds are assets that she was entitled to. Even if Mr. Crawford solely dissipated the $300,000 Cash Proceeds, Mrs. Crawford has an independent duty to provide documents as to its dissipation." ECF No. 26. The Crawfords do not contest this assertion.

Having considered the Crawfords' education, business experience, and sophistication, as well as the admitted commingling of business and personal finances, the Court finds that the U.S. Trustee has demonstrated that the Crawfords did not provide enough information for their creditors to ascertain their financial condition and track their financial dealings with substantial completeness and accuracy such that the U.S. Trustee established a *prima facie* case under

17

§ 727(a)(3).  The Crawfords, themselves, are not even able to ascertain their own financial condition, as the Allocation shows.

**C.  Whether the failure to act was justified under the circumstances.**

The Crawfords could show that their "act or failure to act was justified under all of the circumstances of the case[.]"  *In re Strbac*, 235 B.R. at 883.  In other words, the burden of proof now shifts to the Crawfords.  It is worth noting, "§ 727(a)(3) does not impose upon a debtor an obligation to keep and preserve financial records forever.  Instead, § 727(a)(3) only imposes upon a debtor a duty to keep and preserve financial records for a reasonable period of time, with two years having been used as a minimum point of reference."  *In re Michael*, 433 B.R. at 221 (citing *Menotte v. Hahn (In re Hahn)*, 362 B.R. 542, 548 (Bankr. S.D. Fla. 2007)).

Regarding the $300,000 in cash, the Crawfords state that "they provided reasonable explanation to how they spent the $300,000 of cash they received from Danny M Properties. . . ."  ECF No. 41.

As for justification for the failure to provide bank account documentation, the Crawfords assert that they "consistently and constantly went [sic] their banks and culled bank statements as requested by the [U.S. Trustee]."  ECF No. 41.  Mr. Crawford also testified that First Federal of Lakewood account ending in x-1559 was "hacked" in June 2023, and "the bank opened account ending in x-4493."  ECF No. 41.  The Crawfords further claim that they did not produce statements for the First Federal of Lakewood account ending in x-4493 because "the account was closed" and "there are none."  ECF No. 41.

Regarding the tax returns, the Crawfords contend that they were "told that their personal 2023 Tax Returns, and [] Cleveland Custom Homes and Ned's Maintenance were completed but

18

could not be filed until they paid for them." ECF No. 41. The Crawfords argue that they "did provide the [U.S. Trustee] copy of their 2023 Personal and Business Federal Income Tax returns after they paid their accountant." ECF No. 41.

In their Response, the Crawfords themselves acknowledge that "[m]ere testimony from the debtors regarding their version of their financial transactions is insufficient to satisfy the duty imposed by § 727(a)(3), and neither the Trustee nor the court is required to 'reconstruct a debtor's financial situation or take a debtor's word for his financial dealings." ECF No. 12 (citing *Leibowitz v. Tanglis (In re Tanglis)*, 344 B.R. 563, 569 (Bankr. N.D. Ill 2006)).

For business owners who testified at deposition that "everything went through the bank," the Crawfords did not show that their failure to maintain records was justified.[9] The U.S. Trustee has a *prima facie* case under § 727(a)(3), and because the Crawfords did not show that their failure to maintain records was justified, the Court finds no genuine issue of material fact under § 727(a)(3).

## IV. 11 U.S.C. § 727(a)(5)

Section 727(a)(5) deals with a debtor's ability to explain any substantial loss of assets incurred during the lead-up to filing a petition. 11 U.S.C. § 727(a)(5). Section 727(a)(5) provides for a denial of discharge where "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." *Id.* Denial of discharge under § 727(a)(5) is closely related to denial of discharge under § 727(a)(3), and both serve as examples of the Bankruptcy Code's emphasis on full and honest disclosure as a prerequisite to the relief of discharge. *See*

---

[9] The Court is also not persuaded by the Crawfords' explanation for why they did not initially deposit the $300,000 into a bank account.

19

*McDermott v. Roller (In re Roller)*, No. 13-6050, 2014 Bankr. LEXIS 661 at *15 (Bankr. N.D. Ohio Feb. 19, 2014) (citation omitted); s*ee also PNC Bank, Nat'l Ass'n v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 116 (Bankr. W.D. Pa. 2000) (citing *Panuska v. Johnson (In re Johnson)*, 80 B.R. 953, 960 n.8 (Bankr. D. Minn. 1987)) ("'11 U.S.C. § 727(a)(5) is designed to work in tandem with § 727(a)(3), to foster the same process of investigation and disclosure [promoted by § 727(a)(3)], by requiring a debtor to give a satisfactory explanation of his insolvency, after the commencement of the bankruptcy case.'") (alterations in original).

Like § 727(a)(3), courts employ a burden shifting framework under § 727(a)(5). First, to prevail on a claim brought under this section, the U.S. Trustee "has the burden to identify assets which the debtor at one time owned and claims, in his schedules, to no longer possess." *Crocker v. Stiff (In re Stiff)*, 512 B.R. 893, 900 (Bankr. E.D. Ky. 2014) (citation omitted). The U.S. Trustee need not demonstrate wrongful intent on the part of the Crawfords in order to prevail on a § 727(a)(5) claim. *See Smith v. Morse (In re Morse)*, 550 B.R. 338, 361-62 (Bankr. E.D. Tenn. 2016); *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004).

Once the plaintiff has met its burden by identifying the specific assets at issue, the burden shifts to the debtor. If such a case is deemed present here, the Crawfords must offer a "satisfactory explanation" for the loss of assets, which "must contain more than vague guesses and conclusory statements." *McDonald v. McDonald*, 29 F.4th 817, 823 (6th Cir. 2022). At its root, a satisfactory explanation under § 727(a)(5) is one that is reasonable under the circumstances. *In re Reed*, 310 B.R. at 370 (citation omitted). "An important component in ascertaining the reasonableness of any explanation is its capacity for verification; that is, is the explanation sufficient to enable either the trustee or a creditor to properly investigate the

20

circumstances surrounding the loss or deficiency." *Id.* A debtor's vague explanations and inability to substantiate major expenditures is not enough to meet their burden. *See, e.g.*, *Miller v. Bauer (In re Bauer)*, 128 F. App'x 467, 468-69 (6th Cir. 2005) ("The Bankruptcy Court did not err in requiring [the debtor] to supply documentation or corroborating testimony as part of providing a 'satisfactory explanation' of expenditures under § 727(a)(5)."). As contemplated in the § 727(a)(3) analysis, (a)(5) too, requires that debtors only preserve records for a reasonable amount of time. *See, e.g.*, *In re Stimer*, 2020 Bankr. LEXIS 823 at *28 (finding that reliance on documentary evidence from more than five years prior to the debtor's bankruptcy filing to be too remote in time to support a cause of action).

### A. The assets which the Crawfords at one time owned and claim to no longer possess.

The U.S. Trustee claims that the Crawfords "failed to provide sufficient, credible, reasonable explanation for the loss[]" of the $300,000 in cash. ECF No. 26. The U.S. Trustee admits that while the Crawfords "have provided sufficient documentation to account for the dissipation of $88,420" the documentation that the Crawfords provided as to the $79,000 purportedly paid to Caruso Cabinets and Parkhill is "uncorroborated" and "still requires the Court to speculate and draw conclusions based only on Mr. Crawford's uncorroborated statements." ECF No. 26.

Moreover, the U.S. Trustee claims, "there is no dispute of material fact that the [Crawfords] have failed to offer a sufficient explanation to account for the use of the remaining $132,580 of the $300,000 Cash Proceeds." ECF No. 26. In support of his claim, the U.S. Trustee argues that the Crawfords:

> provided no documentation to substantiate Mr. Crawford's conclusory statements as to the dissipation of the remaining $132,580. And . . . the [Crawfords'] own explanations contain inconsistencies as to how the $300,000 Cash Proceeds were dissipated, particularly when comparing Mr. Crawford's

21

> response to the First Discovery Requests to the 7.29.24 Cash Proceeds
> Breakdown. Such inconsistencies show that the [Crawfords'] explanations do
> not eliminate the need for the Court and the [U.S.] Trustee to speculate as to
> what happened to the $300,000 Cash Proceeds.

ECF No. 26.

The U.S. Trustee has adequately identified the specific asset in question ($300,000 in cash) and has therefore met his initial burden under § 727(a)(5).

**B. No satisfactory explanation for loss of the assets.**

The Crawfords contend that they "provided sufficient documentation to show that they paid creditors no less than $257,220 from the $300,000." ECF No. 41. They further submit that they have "met their burden of proof regarding how they spent eighty-six (86) percent of the funds." ECF No. 41.

The Crawfords have failed to provide sufficient documentation. The Allocation, supported mainly by Mr. Crawford's Affidavit, is not satisfactory. A "satisfactory explanation" for the loss of assets "must contain more than vague guesses and conclusory statements." *McDonald*, 29 F.4th at 823. Moreover, an important component in ascertaining the reasonableness of any explanation is its capacity for verification. *Id.*

The Court is not satisfied with the explanations provided as to how nearly all the $300,000 was allocated. The Crawfords' satisfactorily explained how $60,420 was spent, as evidenced by an invoice produced by Carter Lumber, dated February 24, 2023. ECF No. 26, Ex. G. The Crawfords submission of unauthenticated screen shots of purported text message conversations regarding cash transactions with New Phase Electric and Parkhill Roofing (ECF No. 26, Ex. G) are vague, conclusory, and unverifiable, and thus, unsatisfactory. The Crawfords' Response included an Affidavit. ECF No. 41, Ex. A. Therein, Mr. Crawford outlined his

22

recollection of how the $300,000 of cash was allocated. Aside from Mr. Crawford's Affidavit, there is no evidence or means to verify the alleged: $32,000 paid to ST Carpentry; $27,000 deposited in Cleveland Custom Homes First Federal of Lakewood acct #1559; $5,000 in incentive paid to Cleveland Custom Homes' employees; $15,000 paid to Scott David; and $10,800 in the Crawfords' personal checking account. In his Affidavit, Mr. Crawfords concedes that he cannot account for an additional $22,780.

The Court finds that due to the failure to provide adequate explanations or documentation, the Crawfords' accounting of how they spent $300,000 in cash are conclusory and constitute the kind of "vague, indefinite and uncorroborated assertions" that courts deem unsatisfactory explanations under § 727(a)(5). *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 739 (Bankr. S.D. Ohio 2008) ("Vague and indefinite explanations of losses such as 'monies were spent' have been found unacceptable without documentation."). Therefore, the Court finds no genuine issue of material fact under § 727(a)(5).

## CONCLUSION

Having reviewed the record in this case, including the Motion, Response, Reply and all exhibits, for the foregoing reasons and pursuant to 11 U.S.C. § 727(a)(3) and (a)(5), the Court grants the U.S. Trustee's Motion for Summary Judgment. The United States Trustee is entitled to judgment as a matter of law. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 26) be, and hereby is, **GRANTED**.

**IT IS FURTHER ORDERED** that the Debtors' discharge be, and hereby is, denied.

A separate judgment shall issue consistent with this memorandum.

23